IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SHEILA J. THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:01CV0626-M |
| | ) | [WO] |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER ON MOTION**

This matter is before the court on the plaintiff's ["Thomas"] motion for an award of attorney fees (Doc. # 25) as authorized by 42 U.S.C. § 406(b)(1) (2000). The defendant ["Commissioner"] has filed a response opposing the motion (Doc. # 27) to which Thomas has replied (Doc. # 28).

Upon review of the parties' submissions and having undertaken an independent review of the character of the representation and the results achieved by the plaintiff's counsel in this case, the court finds that the motion should be granted.

**I.   DISCUSSION**

*A.   Relevant Facts and Procedural History*

Thomas retained attorney R. Michael Booker ["Booker"] on 6 May 1999 for the purpose of securing Social Security disability benefits (Doc. # 25, p. 4). As is typical in this type of case, their agreement called for payment to Booker of 25 percent of "all past due

benefits" if their efforts met with success. *Id.* If unsuccessful, Booker would receive nothing. *Id.*

At the administrative level, Thomas's application for benefits was denied, so she pursued a civil action in this court, which found in her favor and remanded her case to the Commissioner. Shortly thereafter, while her case was still before the Commissioner, Thomas moved for an award of attorney fees under the Equal Access to Justice Act ["EAJA"], 28 U.S.C. § 2412(d) (2000), and the court granted her motion, awarding $2,000, which represented an hourly rate of $125 for 16 attorney hours (Doc. # 24).

Approximately six months later, slightly more than three years after Thomas retained Booker, the Commissioner determined that Thomas was disabled and awarded past-due benefits totaling $47,909 (Doc. # 25, p. 1). One quarter of the past-due benefits was set aside by the Social Security Administration ["SSA"] to ensure payment of any attorney fees approved by the agency and/or this court in accordance with 42 U.S.C. § 406 (Doc. # 25, p. 9). For his work before the agency, Booker received a fee award of $4,000, and the Commissioner continued to withhold the remaining $7,977.25 from which any additional fees approved by this court would be paid (Doc. # 25, p. 9). Thus, to date, Booker has received $4,000 of the $11,977.25 to which he is entitled under the fee agreement.[1]

---

[1] The $4,000 figure obviously does not include the fees awarded under the EAJA, and Booker must pay to Thomas the lesser of the EAJA award or the amount the court approves under section 406. Act of Aug. 5, 1985, Pub. L. No. 99-80, § 3, 99 Stat. 186.

*B.     The Arguments*

Noting Booker's success, his considerable experience (29 years) representing Social Security claimants, and the risks he undertook by providing representation on an all-or-nothing contingency-fee basis for more than three years before obtaining the desired results, Thomas contends that Booker should receive the full amount to which he is entitled under their agreement.

Although the Commissioner neither contends that additional fees are wholly undeserved nor alleges wrongdoing by Booker, she nonetheless contends that the amount sought, which translates to an hourly fee of $498.58 for work performed before the district court, constitutes a windfall and is therefore unreasonable.[2]

*C.     The Law*

The relevant statute states that

> [w]henever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a *reasonable fee* for such representation, *not in excess of 25 percent* of the total of the past-due benefits to which the claimant is entitled by reason of such judgment.

42 U.S.C. § 406(b)(1)(A) ["section 406"] (emphasis added).

Until the United States Supreme Court issued an opinion on the subject, the Federal

---

[2] The Commissioner's hourly rate calculation is based on an award of $7,977.25, which is the amount Thomas has requested, for 16 hours of work.

Courts of Appeals applied one of two standards for awarding attorney fees under section 406. One standard, which was the rule in the Eleventh Circuit, involved a court-initiated calculation under the traditional "lodestar" analysis, which calls for an upward or downward adjustment – depending upon a variety of factors – to a court-determined, reasonable hourly fee, multiplied by a court-determined, reasonable amount of time. *Gisbrecht v. Barnhart*, 535 U.S. 789, 797-807 (2002) (discussing the different approaches); *Kay v. Apfel*, 176 F.3d 1322, 1324-26 (11th Cir. 1999) (discussing the lodestar method and expressly adopting that method for attorney fee awards under section 406), *overruled by Gisbrecht*, 535 U.S. 789.

The other standard, a retrospective reasonableness determination deferential to the agreement between the claimant and her attorney, was much less intensive and intrusive. *Gisbrecht*, 535 U.S. at 797-807; *see also Kay*, 176 F.3d at 1325 (describing what the court referred to as the "contingent fee" method).

Referring to the "primacy of lawful attorney-client fee agreements," *id.* at 792, the *Gisbrecht* Court distinguished between attorney fees awarded through the application of a statutory fee-shifting scheme wherein the prevailing party collects the fees from its opponent and contingency fees previously agreed upon by the disability claimant and her attorney and later approved by the court as reasonable – or, conversely, disapproved as unreasonable. *See generally*, *id.*[3]

Fees are not shifted in the disability case under section 406, and the defendant, i.e.,

---

[3]The Court's opinion was limited to the reasonableness of a contingency fee agreement and did not discuss the proper analysis of an agreement for an hourly fee.

the Commissioner, "has no direct financial stake in the [court's determination]; instead, she plays a part in the fee determination resembling that of a trustee for the claimant[]." *Id.* at 798 n.6.

These distinctions, *inter alia*, led the Court to conclude that section 406(b) "does not displace contingent-fee agreements as the primary means by which fees are set for successfully representing Social Security benefits claimants in court. Rather, § 406(b) calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases." *Id.* at 807. Thus, the Court held, the traditional lodestar analysis is inapplicable. *Id.* at 808-09.

The Eleventh Circuit Court of Appeals has yet to provide guidance on interpreting **Gisbrecht**'s instructions to the courts to "approach fee determinations by looking first to the contingent-fee agreement, then testing it for reasonableness" in order to "appropriately reduce[] the attorney's recovery based on the character of the representation and the results the representative achieved." *Id.* at 808.

Conceivably, a broad reading would allow for a formulaic evaluation of factors similar to those considered in the traditional lodestar analysis. *See* **Mudd v. Barnhart**, 418 F.3d 424, 428-29 (4th Cir. 2005) (upholding the lower court's reasonableness evaluation, which included reference to the work the attorney performed at the administrative level, because the district court's approach "gave [it] . . . a better understanding of factors relevant to its reasonableness inquiry, such as the overall complexity of the case, the lawyering skills necessary to handle it effectively, the risks involved, and the significance of the result

5

achieved in district court"). Thus, a number of considerations may result in a reduction of the fees agreed upon.

When altering the attorney-client agreement, courts should be mindful of Justice Scalia's suggestion (in his lone dissent) that the Court established a presumption of reasonableness, and of the examples the majority opinion provided to illustrate the limited circumstances under which a reduction may be appropriate.[4]  Accordingly, the court may reduce the fee agreed upon when, for example, the attorney has been responsible for a delay in the case or when "the benefits are large in comparison to the amount of time counsel spent on the case . . .." *Id.* at 808.

Regardless of the particulars, which the courts have not yet explored in depth, as a general rule, the hurdle **Gisbrecht** erects for the claimant's attorney is rather low, and a

---

[4]Justice Scalia's conclusion insularly focuses on the language the majority opinion used to frame the issue.

> At issue is a question that has sharply divided the Federal Courts of Appeals: What is the appropriate starting point for judicial determinations of "a reasonable fee for [representation before the court]"?  See *ibid.*  Is the contingent-fee agreement between claimant and counsel, if not in excess of 25 percent of past-due benefits, *presumptively reasonable*?  Or should courts begin with a lodestar calculation . . . of the kind we have approved under statutes that shift the obligation to pay to the loser in litigation?

**Gisbrecht**, 535 U.S. at 792 (emphasis added).

By explicitly answering the latter question in the negative, the court implicitly answers the former in the affirmative.  Subsequent language, however, clarifies that the court did not intend to establish a presumption.  "Within the 25 percent boundary, as petitioners in this case acknowledge, the attorney for the successful claimant must show that the fee sought is reasonable for the services rendered."  *Id.* at 807.  Nevertheless, the Court's rhetorical question may serve to underscore the featherweight burden imposed on the claimant's attorney.

change to the agreement is warranted at least, and perhaps at most, when justice requires. *See*, *e.g.*, **Yarnevic v. Apfel**, 359 F. Supp. 2d 1363, 1363-67 (N.D. Ga. 2005) (approving a contingency fee agreement resulting in an award of $21,057.75 for approximately 33 hours of work conducted primarily by the attorney's paralegals and noting, "Since **Gisbrecht** . . . the district courts generally have been deferential to the terms of contingency fee contracts in § 406(b) cases, accepting that the resulting de facto hourly rates may exceed those for non contingency-fee arrangements"); **Claypool v. Barnhart**, 294 F. Supp. 2d 829 (S.D.W. Va. 2003) (approving a request for an award under a contingency fee agreement of $18,000, or approximately 9 percent of the past-due benefits awarded, for 12.56 hours); **Hearn v. Barnhart**, 262 F. Supp. 2d 1033, 1037 (N.D. Cal. 2003) (approving $25,132.50, or 18.2 percent of past-due benefits, for 56 hours); **Martin v. Barnhart**, 225 F. Supp. 2d 704 (W.D. Va. 2002) (approving $10,189.50, or 25 percent, for 16.82 hours); *see also* **Kay**, 176 F.3d at 1325 (describing the "contingent fee" method as it was applied prior to **Gisbrecht** as "essentially erect[ing] a rebuttable presumption that a contingency fee arrangement of 25 percent or less is a reasonable fee, absent evidence suggesting otherwise").

### D.     *Thomas's Request*

This case does not require the court to explore the boundaries of a reasonableness inquiry under **Gisbrecht** because Thomas's request clearly is reasonable.  A three-year commitment from Thomas's attorney, a highly experienced social security practitioner, yielded maximum results while confronting the very real risk of gaining nothing in return for

his efforts.

Although the Commissioner emphasizes what appears to have been Booker's minimum expenditure of time (16 hours at the federal court level) and reasons that the resultantly disproportionate fee/time ratio merits a reduction, adopting such a rationale would encourage delays, questionable timekeeping practices and unnecessarily lengthy documentary submissions.

Furthermore, it would require the court to determine first a reasonable hourly rate, which is the initial step in a lodestar calculation – precisely the method *Gisbrecht* rejected – instead of focusing solely on the reasonableness of the contingency fee agreement as a whole under the circumstances. See *Claypool*, 294 F. Supp. 2d at 834 (noting that an analysis that would require an initial determination of a reasonable hourly fee was foreclosed by *Gisbrecht*).

In addition, the Commissioner contends that the fee sought amounts to a windfall to Booker, but she points to no evidence that would suggest the outcome in this case resulted from some sudden, unexpected turn of luck for which Booker does not deserve full compensation. See *Mitchell v. Barnhart*, 376 F. Supp. 2d 916, 921 (S.D. Iowa 2005) (discussing the term "windfall" in a similar context and describing as an example of such a situation a case where "the day after the contingency-fee was signed the plaintiff received benefits, without [sic] any effort extended by the claimant's attorney"). This is not a case, for example, where an incomplete administrative record, as opposed to an examination of the merits of the case, required reversal and remand for a new hearing that ended with a finding

of disability.

On the contrary, Thomas's success quite clearly emanated from the efforts that she and her attorney contemplated when they agreed upon the compensation to be paid. Reducing the fee award in this case actually would amount to a windfall to Thomas, who would receive, in addition to the refunded EAJA award, any amount remaining from the funds withheld by the Commissioner. Furthermore, it would discourage able, experienced attorneys, already in short supply, from representing deserving disability claimants.

## II.   CONCLUSION

Therefore, it is hereby

ORDERED as follows:

1) The plaintiff's motion is GRANTED;

2) The Commissioner is DIRECTED to pay directly to Booker the amount of $7,977.25; and

3) Booker is DIRECTED to pay to Thomas the amount of $2,000 upon receipt of the payment from the Commissioner.

DONE this 20th day of December, 2005.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE